FILED

06/07/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

**EDWARD HOOD, JR. v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Henderson County**
**No. 08059-3  Kyle Atkins, Judge**

_____

**No. W2016-01998-CCA-R3-PC**

_____

The petitioner, Edward Hood, Jr., appeals the denial of his petition for post-conviction relief as untimely. The petitioner asserts the applicable statute of limitations for his claim should be tolled as he was incompetent during the filing period. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Samuel W. Hinson (on appeal) and Jack S. Hinson (at hearing), Lexington, Tennessee, for the appellant, Edward Hood, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jerry Woodall, District Attorney General; and Nina Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

This post-conviction appeal stems from the sexual crimes the petitioner committed against his minor daughter in 2007. The petitioner was indicted for one count of sexual battery, two counts of rape, and two counts of incest. Prior to trial, on February 6, 2008, Dr. Richard K. Drewery, a clinical psychologist, evaluated the petitioner to determine his competency. Dr. Drewery determined the petitioner was "competent to stand trial but suffered from depressive disorder."

The petitioner went to trial, was convicted of two counts of rape of a child and two counts of incest, and appealed.[1] In affirming the petitioner's convictions, this Court detailed the underlying facts of the petitioner's case, as follows:

C.L., the victim in this case, testified that she was eleven years old when the first crime in this case occurred. She stated that on February 24, 2007, her father, [the petitioner], entered her room and took off his clothes. He then walked over to her bed, took her pajamas off, got on top of her, and penetrated her vagina with his penis. Before leaving her room, [the petitioner] told the victim, "If you say anything[,] I'm going to hurt you." The victim stated that she remembered the crime occurring on February 24 because it was close to her mother's birthday on February 23.

On July 28, 2007, the victim stated that her father had sexual intercourse with her in the same manner as on February 24, 2007. She remembered the date that this second crime occurred because it was close to her birthday on July 20. She said she later told her mother about these crimes, but she and her mother did not immediately report these crimes to the police. The victim said that she and her mother reported the crimes to the police some time in December when her father was no longer living with them. The victim said that she did not immediately tell her mother about the February 24, 2007 crime because she was scared. She could not explain why she and her mother did not contact the police regarding the crimes sooner. On cross-examination, the victim denied allowing boys into her room through her window.

Landon Delaney testified that he was a correctional officer at the Henderson County Jail in 2007. On December 26, 2007, during a random search of [the petitioner's] cell, Delaney found a note written by [the petitioner], which stated, "I, Ed Hood, fingered and [f——] my youngest child, [the victim], and said some sex-related things to [the victim's] friend, [K.B.]. She and [the victim] were talking about sex and having a threesome. I said I wanted to see that. Signed, Ed Hood." Delaney said that he removed the note from [the petitioner's] cell and gave it to the jail sergeant, Lelani Murphy. Although [the petitioner] never reported a fight while he was in jail, Delaney remembered [the petitioner] having a black eye at some point during his incarceration. He said [the petitioner] never disclosed who had given him the black eye and never wanted to answer any questions about it. Delaney stated that it was unusual for inmates to write

---

[1]The sexual battery charge was dismissed prior to trial.

confessions and that [the petitioner's] note was the only confession that he had ever found at the jail.

Justin Wallace, an investigator with the Henderson County Sheriff's Department, testified that [the petitioner] asked to speak with him on December 26, 2007, regarding the note that was found in his cell. Investigator Wallace gave [the petitioner] his *Miranda* rights, [the petitioner] signed a written waiver of these rights, and then [the petitioner] gave the following statement:

> I, Ed Hood, did advise Investigator Wallace that there was a possibility that while I was messed up on pills that I could have had sexual relations with my daughter, [the victim]. I also advised him that while my daughter was on the phone with [K.B.] I overheard them talking about having a threesome. I advised [K.B.] that I would like to see that when she was eighteen.

Donna Heatherington, a lieutenant with the Lexington Police Department, testified that the victim and the victim's mother initially reported the crimes to her in December 2007. She then set up a forensic interview for the victim at the Carl Perkins Center. Although she attempted to talk to [the petitioner] about these crimes, he refused to talk to her. She said that she did not interview the victim's sister, K.P., because she was not living in the home at the time that these crimes occurred. Lieutenant Heatherington stated that a rape kit was not conducted on the victim because so much time had passed since the crimes were committed. Following Lt. Heatherington's testimony, the State rested.

The defense recalled the victim to the stand. During questioning by defense counsel, the victim acknowledged telling a forensic interviewer that her father had never sexually abused her. The victim said she told the interviewer that her father was innocent because she did [*sic*] want her father to get into trouble and because she was afraid of her father. She admitted that she made this statement regarding her father's innocence after her father was arrested.

Robin Reddick, the victim's aunt and [the petitioner's] sister, stated that the victim had lived with her for approximately a month and a half. Reddick stated that she did not find the victim to be an honest, truthful child.

[V. W.], the victim's cousin, testified that the victim told her at a Christmas party that "she lied about her daddy's case and misse[d] her daddy." Westerfield said that there were no adults present when the victim made this statement to her.

Lelani Murphy, the jail administrator, testified that incident reports are generated when a prisoner receives a black eye while incarcerated. She said that she did not recall [the petitioner] having a big black eye but did remember him having a "little bit of a little thing right here[.]" She stated that the jail records did not contain any incident reports regarding [the petitioner]. Murphy said that there are always two jailers present and that these jailers would be able to hear an altercation or see an altercation on the cameras, which are set up to monitor the jail cells.

Brenda Riley, [the petitioner's] mother and the victim's grandmother, testified that [the petitioner's] face was red, he appeared as though he were in pain, and he looked as if someone had "been hitting him in the face" at his court appearance in early January 2008. Riley opined that the victim was not a truthful child.

[The petitioner] denied committing the crimes in this case. He stated that the victim was a "daddy's girl" when she was younger; however, he stated that not too long ago he had called the police because C.L had become "unruly." He said that he sometimes had problems getting the victim to behave properly.

[The petitioner] stated that he was assaulted by other inmates while he was incarcerated. He also stated that the inmates in his cell forced him to write the note that was discovered during the random search of his cell. He said that these inmates gave him two black eyes, cracked his ribs, and "busted" his head and lip. [The petitioner] said that he reported his injuries to a jail officer and to the jail nurse.

[The petitioner] stated that he did not recall asking to speak to Investigator Wallace. He said that he did not know the names of any of the investigators other than Investigator Heatherington, who investigated his case. He stated that he wrote the note because he "was already getting beat up on a daily basis" after the other inmates discovered his charges. He said that these inmates forced him to use the specific words in the note.

- 4 -

On cross-examination, [the petitioner] said that he was surprised to discover that the victim had no disciplinary problems at school. He also acknowledged that the victim's grades had improved since she no longer lived with him. [The petitioner] claimed that he yelled for help and banged on the doors during the inmate assaults, but the jailers in the front never heard him. [The petitioner] said that Officer Meggon was the only jailer that he told about what was happening to him, but he never told her the names of the individuals who were injuring him. He also told his family about the assaults. [The petitioner] said that although the inmates in his cell threatened to sexually assault him, they never actually sexually assaulted him.

Shannon Hood, the victim's mother, testified that she gave a statement to Lieutenant Heatherington regarding the crimes [the petitioner] committed against her daughter. She stated that [the petitioner] had become slightly more strict with the victim just before the victim made the sexual abuse allegations against him. During cross-examination by the State, Ms. Hood admitted that she was aware that [the petitioner] was committing these crimes against their daughter but did not tell the police immediately. However, Ms. Hood said that she told Lieutenant Heatherington that she failed to contact the police immediately regarding [the petitioner's] crimes. She said that her failure to immediately contact the police about these crimes was one of the main reasons that the victim was currently living with a foster family instead of with her. Ms. Hood said that she knew [the petitioner] was committing these crimes because she "heard moaning" when [the petitioner] would go into the victim's room. She said that [the petitioner] would stay in the victim's room for thirty minutes to an hour. She claimed that she did not contact the police because she "was scared."

*State v. Edward L. Hood*, No. W2009-02501-CCA-R3-CD, 2010 WL 5054422, at *1-3 (Tenn. Crim. App. Dec. 6, 2010), *perm. app. denied* (Tenn. April 14, 2011). For his convictions, the trial court imposed an effective sentence of forty-eight years.

On July 15, 2014, the petitioner filed a *pro se* petition for post-conviction relief alleging, along with his post-conviction claims, that the statute of limitations for his claims should be tolled due to his incompetence. The State responded, arguing the petitioner's claims were time-barred. The State asserted the petitioner's one-year statute of limitations expired on April 14, 2012, one year after our supreme court denied his application to appeal on April 14, 2011. Further, the State argued the petitioner "failed to

submit any factual allegations to support the contention that he is mentally incompetent," and the petitioner's post-conviction claims did not warrant relief.

Despite the State's argument, the trial court appointed present counsel and ordered, upon agreement of the parties, a mental evaluation of the petitioner to determine his competency. The trial court specifically ordered the evaluation to "determine whether [the petitioner's] mental disease, disorder or defect, if any, affected his ability to file his post conviction [p]etition within the statu[t]e of limitations period." Dr. Drewery again evaluated the petitioner and testified to the petitioner's competency at an evidentiary hearing on July 8, 2016.

At the hearing, Dr. Drewery discussed his findings subsequent to the court-ordered forensic evaluation of the petitioner performed on July 20, 2015. In reaching his conclusions, Dr. Drewery reviewed his pre-trial examination of the petitioner, the petitioner's treatment records from the Whiteville Correctional Facility, and a psychological evaluation performed by Dr. Michael Guinle on July 17, 2002, in support of the petitioner's application for disability benefits. Relying on these records and his post-trial evaluation of the petitioner, Dr. Drewery opined that the petitioner was competent but suffered from "significant learning disabilities" and depressive disorder.

Dr. Drewery explained his post-trial competency determination in detail. First, Dr. Drewery reiterated his pre-trial competency findings, noting that the petitioner's competency assessment had not changed. He explained that at the time of trial, the petitioner suffered from depressive disorder, which he classified as a mental disease, but was not psychotic:

I suggested bipolar disorder, which is a form of depressive disorder. And I mention the history of past alcohol addiction, which [the petitioner] says is in remission. I said [the petitioner] might possibly have borderline intellectual functioning since he gave a history of special education. However, [the petitioner's] intellectual problems were not sufficient to prevent him from being competent to stand trial.

As it related to the petitioner's competency, Dr. Drewery stated the petitioner's depressive disorder could affect the petitioner's initiative regarding the legal process. Dr. Drewery testified that the petitioner maintained a verbal I.Q. of 67 and operated at a third-grade reading level. Despite the petitioner's I.Q. score falling "at the high end of mental retardation," Dr. Drewery did not "suspect[] significant retardation" on behalf of the petitioner. Rather, Dr. Drewery testified that "in terms of practical learning, he's had experiences in which he could perhaps go beyond the third grade level."

- 6 -

Dr. Drewery opined that while "there might be some impairment involved" as a result of his low I.Q. and depressive disorder, those issues would not prevent the petitioner from understanding his legal position or his ability to make rational choices. He explained that the petitioner could make decisions on his own if provided the appropriate information. When asked for clarification by the court, Dr. Drewery confirmed that the petitioner's competency had not changed from his pre-trial state, and that his depressive disorder has not affected "his capacity to function in this lawsuit."

The petitioner also testified at the competency hearing. He explained that he hired both trial and appellate counsel to represent him in this case. He understood he was convicted at trial, and that his convictions were affirmed on appeal. The petitioner stated that he knew he could file a post-conviction petition, and began the process twice, first at the Northwest Correctional Complex and then approximately five years ago when he was transferred to the Whiteville Correctional Facility. The petitioner explained that "[p]robably about six months" after he was transferred, he met with legal aides to discuss his post-conviction petition. The petitioner also stated he was placed in special education classes in third grade, and he struggles with reading and writing.

The post-conviction court filed an order dismissing the petition as untimely on September 1, 2016. In the order, the court stated:

(1) There has not been a sufficient showing that [the] [p]etitioner is incompetent, nor that he was incompetent at the time the statute of limitations passed for the filing of a petition for post-conviction.

(2) There has not been a sufficient showing that [the] [p]etitioner suffers from a mental disease or defect that prevents him from understanding his legal position and the options available to him, or from making a rational choice among his options.

(3) [The] [p]etitioner testified that prior to the statute of limitations expiring for [the] [p]etitioner to file a post-conviction petition, [the] [p]etitioner was given notice of the opportunity to file a petition by a legal aid representative, while incarcerated in the Tennessee Department of Corrections at Tiptonville.

This appeal followed.

## ANALYSIS

On appeal, the petitioner claims he is entitled to due process tolling of his post-conviction statute of limitations arguing his petition was untimely filed due to his incompetency. However, as argued by the State, no facts exist to support due process tolling of the one-year statute of limitations on the basis of the petitioner's alleged incompetency. Accordingly, the post-conviction court's order dismissing the petition as time-barred must be upheld.

A post-conviction petitioner has one year from "the date of the final action of the highest state appellate court" in which to file a petition for relief. Tenn. Code Ann. § 40-30-102(a). "Time is of the essence of the right to file a petition for post-conviction relief." *Id.* Untimely filing of a post-conviction petition extinguishes a petitioner's post-conviction claims. *Id.*

The Tennessee Supreme Court has outlined limited circumstances which call for due process tolling of untimely post-conviction petitions. One such circumstance allows a petitioner to prove his post-conviction petition was untimely due to mental incompetency. *See Seals v. State*, 23 S.W.3d 272, 277-80 (Tenn. 2000). In order to determine the petitioner's mental competency, our supreme court applies the standard and procedure found in Tennessee Supreme Court Rule 28 Section 11, which seeks to determine "whether the petitioner possesses the present capacity to appreciate the petitioner's position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether the petitioner is suffering from a mental disease, disorder, or defect which may substantially affect the petitioner's capacity." Tenn. Sup. Ct. R. 28, § 11; *see Reid ex rel. Martiniano v. State*, 396 S.W.3d 478 (Tenn. 2013).

To successfully assess a petitioner's competency, our supreme court advised that "the trial court should employ the three-step *Rumbaugh* test" which asks:

(1) Is the person suffering from a mental disease or defect?

(2) If the person is suffering from a mental disease or defect, does that disease or defect prevent him from understanding his legal position and the options available to him?

(3) If the person is suffering from a mental disease or defect which does not prevent him from understanding his legal position and the options available to him, does that disease or defect, nevertheless, prevent him from making a rational choice among his options?

If the answer to the first question is no[;] the court need go no further, the person is competent. If both the first and second questions are answered in the affirmative, the person is incompetent and the third question need not be addressed. If the first question is answered yes and the second is answered no, the third question is determinative; if yes, the person is incompetent, if no, the person is competent.

*Reid ex rel. Martiniano*, at 500-01 (quoting *Rumbaugh v. Procunier,* 753 F.2d 395, 398-99 (5th Cir. 1985).

It is understood that "mental illness is not the equivalent of mental incompetence." *State v. Nix*, 40 S.W.3d 459, 463 (Tenn. 2001). Thus, "[a] petitioner seeking to toll the statute of limitations due to mental incompetence 'must make a prima facie showing that [he] is incompetent by submitting affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence.'" *Jefferson Lawton Freeman v. State*, No. W2014-00605-CCA-R3-PC, 2015 WL 176536, at *2 (Tenn. Crim. App. Jan. 14, 2015) (quoting *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 512-13 (Tenn. 2013) (internal quotations omitted). Absent sufficient facts establishing a petitioner is entitled to due process tolling, an untimely petition must be dismissed. *Eddie Williams, Jr. v. State*, No. W2011-00202-CCA-R3-PC, 2011 WL 2410364, at *1-2 (Tenn. Crim. App. June 9, 2011).

Here, the record shows that the statute of limitations for the petitioner's post-conviction claim expired on April 14, 2012, and his petition was not filed until July 15, 2014. Therefore, the petition is patently time-barred. In reviewing the petitioner's competency claim, we are unable to find any facts in the record to support due process tolling of the statute of limitations. Rather, the facts established at the competency hearing show the petitioner was competent before, during, and after trial, including the time in which the petitioner had to file his post-conviction claims.

At the hearing, Dr. Drewery testified that the petitioner remains competent to navigate the complex legal landscape he has faced since trial. Dr. Drewery acknowledged that the petitioner suffers from learning deficiencies and depressive disorder; however, he opined that these impairments did not affect the petitioner's ability to timely file his post-conviction petition. Dr. Drewery summarized his conclusions in his forensic evaluation of the petitioner, as follows:

It is obvious from his answers to the standard established competency questions that he retains the competency that was established when he was evaluated on a pretrial basis. In my opinion, the [petitioner], still possesses the present capacity to make rational choices with respect to

- 9 -

continuing or abandoning in further litigation. His capacity is not substantially affected by his depression. In like manner, I do not believe that his condition has affected his ability to file this post conviction petition within the statute of limitations.

The record shows the petitioner's depressive disorder did not affect his ability to file the post-conviction petition within the applicable statute of limitations.

The petitioner's testimony bolstered Dr. Drewery's assessment of the petitioner's competency. At the hearing, the petitioner detailed his participation in his legal proceedings over the past ten years. The petitioner explained he hired attorneys for his trial and appeal, he knew he could file a post-conviction petition, and he initiated post-conviction petitions in two different correctional facilities. Though the petitioner testified he was not provided information regarding the post-conviction process, his testimony proves otherwise.

Guided by *Reid ex rel. Martiniano*, we note the petitioner cannot meet the incompetency standard required of him. While Dr. Drewery testified that the petitioner suffers from a mental disease, depressive disorder, he also specifically testified that the petitioner's depressive disorder does not "prevent him from understanding his legal position and the options available to him." As such, the petitioner cannot satisfy the second *Rumbaugh* prong and cannot show he was incompetent during the filing period. The petition lacks sufficient facts to warrant due process tolling of the petitioner's stale post-conviction claims, and the petitioner is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE

- 10 -